IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 3:24-cr-00050-SAL-1 |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANTONIO MARQUIS NICHOLSON** | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

Defendant Antonio Marquis Nicholson (hereinafter "Mr. Nicholson"), by and through his undersigned counsel, respectfully moves this Court for a substantial variance from the advisory Guidelines range in this case.

As discussed more fully herein, Mr. Nicholson, who has zero criminal history points and has never before served a custodial sentence, admits that he engaged in a human trafficking conspiracy involving persons who had not attained the age of 18 years. He denies – and the contemporaneous forensic record does not show – that he used force, threats of force, fraud, or coercion. A sentence within the advisory Guidelines range of life imprisonment would be greater than necessary to comply with the purposes of sentencing, would dwarf the sentences imposed on similarly situated defendants across the country, and would ignore the shared nature of the conduct in this case. Mr. Nicholson submits this Memorandum to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 543 U.S. 220 (2005).

**TABLE OF CONTENTS**


I. Introduction ..... 1

II. Factual and Procedural History ..... 2

A. The charges and Mr. Nicholson's guilty plea ..... 2

B. The clarified record: Mr. Nicholson admits the conspiracy and does not admit to force, threats of force, fraud, and coercion. ..... 2

C. The PSR, Mr. Nicholson's objections, and the advisory Guidelines calculation ..... 4

III. Argument ..... 5

A. Even if the Court overrules Mr. Nicholson's objections, the facts and circumstances underlying those objections warrant a substantial variance. ..... 5

B. § 3553(a)(6): The need to avoid unwarranted sentencing disparities – addressed first, because the Sentencing Commission's own data is decisive – supports a sentence far below the advisory range. ..... 7

1. At a minimum, the appropriate offense level in this case is 42, and the appropriate JSIN data shows that the advisory range itself dramatically overstates the sentences actually imposed on similarly situated defendants. 8

2. Even under the PSR's calculation, the JSIN data supports a substantial variance – and the offense level 43 data actually understates the disparity. 10

3. Although § 3553(a)(6) speaks to disparities across judges and districts, disparities among the defendants in this case are properly considered under the nature and circumstances of the offense – and they, too, support a variance ..... 11

C. A variance from the advisory Guidelines range is warranted based on a consideration of the sentencing factors under 18 U.S.C. § 3553(a). ..... 13

1. *§ 3553(a)(1): A variance is appropriate based on Mr. Nicholson's history and characteristics.* ..... 13

2. *§ 3553(a)(1): A variance is appropriate based on the nature and circumstances of the offense.* ..... 16

3. *§§ 3553(a)(2)(A)–(C): A variance reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.* ..... 17

*4. § 3553(a)(2)(D): A variant sentence is appropriate given the needed educational, vocational, and medical treatment* ..... 18

*5. §§ 3553(a)(3)–(a)(5) and (a)(7): A variant sentence is appropriate given the kinds of sentences available, the advisory range, pertinent policy statements, and restitution.* ..... 18

IV. Conclusion ..... 19

## I. Introduction

This case comes before the Court following Mr. Nicholson's guilty plea to a single count of human trafficking conspiracy in violation of 18 U.S.C. § 1594(c). Mr. Nicholson does not run from what he did. He freely, knowingly, and voluntarily pled guilty to, and he admits that he engaged in, a human trafficking conspiracy involving persons who had not attained the age of 18 years. Yet the Presentence Report ("PSR") calculates an advisory Guidelines range of life imprisonment – a sentence reserved, in practice, for a vanishingly small fraction of federal offenders, nearly half of whom are murderers. *See Life Sentences in the Federal System*, U.S. Sentencing Commission (2022), at 25 (life and de facto life sentences comprised only 0.4 percent of the federal offender population), *available a*t https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf.

Thus, he seeks a substantial variance given the whole of his life and the factors in his case. Mr. Nicholson is 34 years old. He has zero criminal history points and has never served a day of a custodial sentence in his life. PSR ¶¶ 122–123. The Sentencing Commission's own data shows that similarly situated defendants – same primary guideline, same offense level, same criminal history category – receive sentences that are decades below the range the PSR proposes here. And every enhancement driving that range is built on disputed characterizations of a shared course of conduct in which co-defendants and uncharged participants recruited, transported, trained, supervised, and advertised the victims.

For the reasons set forth below, and such other reasons as may be presented at the sentencing hearing, Mr. Nicholson respectfully requests that the Court sustain his objections to the PSR, grant a substantial variance, and impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## II. Factual and Procedural History

### A. The charges and Mr. Nicholson's guilty plea

On January 16, 2024, a federal grand jury returned a ten-count Indictment naming Mr. Nicholson and three co-defendants: Monesha Tatayana Lapri Gary, Rebecca Melanie Perry, and Terrell Counts. *See* PSR ¶ 1; ECF No. 3. The relevant portion of the Indictment alleged a conspiracy, running from approximately December 2022 through July 2023, to recruit, entice, harbor, transport, and maintain minors – Minor Victims 1, 2, and 3 – to engage in commercial sex acts. PSR ¶ 2. Mr. Nicholson had been arrested by state authorities on July 25, 2023, for conduct related to the federal offense; those state charges were dismissed on February 12, 2024, but Mr. Nicholson has remained in continuous custody since his July 2023 arrest – nearly three years as of his sentencing – including a substantial period in which he remained in state custody on the dismissed charges until the probation officer discovered the error and coordinated his transfer into federal custody. PSR at 2 & n.1.

On May 2, 2025, Mr. Nicholson pled guilty to Count One of the Indictment, charging human trafficking conspiracy in violation of 18 U.S.C. § 1594(c), pursuant to a written plea agreement. PSR ¶¶ 18–19; ECF No. 203. Under that agreement, the Government will move to dismiss Counts Two through Ten at sentencing. PSR ¶ 21. Each of Mr. Nicholson's three co-defendants has likewise pled guilty. PSR at 2.

### B. The clarified record: Mr. Nicholson admits the conspiracy and does not admit to force, threats of force, fraud, or coercion.

At Mr. Nicholson's September 30, 2025, sentencing hearing, the Court appointed Undersigned counsel and paused the proceeding. After reviewing the record and conferring with Mr. Nicholson and the Government, Undersigned counsel filed a Joint Request for Status Conference, which the Court granted. *See* ECF No. 294. In that filing, and at the status conference itself, Mr.

Nicholson made his position clear and complete: he acknowledges that he freely, knowingly, and voluntarily entered a plea of guilty to engaging in a human trafficking conspiracy involving persons who had not attained the age of 18 years – the essential elements of the offense. *Id.* He denied, and did not freely and voluntarily plead to, using force, threats of force, fraud, coercion, or any combination thereof. *Id.*

This position is fully consistent with the law of this Circuit. To prove a human trafficking conspiracy under § 1594(c), the Government need only prove an agreement to violate § 1591(a)(1) with knowledge or reckless disregard of *either* (i) the use of force, threats of force, fraud, or coercion, *or* (ii) the fact that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act. *See* Ruschky & Shealy, Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina, p. 322 (2024 Online Edition) (citing various authority); *see also United States v. Torriente*, 378 F. App'x 294, 297 (4th Cir. 2010) ("[W]hen an indictment charges . . . several means of violating a statute, a conviction may be obtained on proof of only one of the means."); *United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009), *as corrected* (Mar. 31, 2009) ("It is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive."); Nicholson Plea Tr., ECF No. 293, at 16:25 (noting to the Court that the Government need only prove either element).

At the status conference held pursuant to the parties' joint request on February 17, 2026, while Mr. Nicholson acknowledged that factual findings about fraud, force, or coercion could still implicate specific enhancements, he also confirmed on the record that he freely, knowingly, and voluntarily pled guilty *only* to a human trafficking conspiracy involving persons who had not attained the age of 18 years – the age-based means described in § 1591(b)(2). He denied, and noted

he was not pleading guilty to, any conspiracy involving the use of force, threats of force, fraud, or coercion. *See* ECF No. 294 at 1–3. The Government agreed that proof of either alternative means sufficed for guilt, and reaffirmed its acceptance of the plea with that understanding.

As noted in the joint status conference request, "[a]ny confusion or reluctance on the part of Mr. Nicholson during this case can be attributed to a previous misunderstanding about his desire to plead guilty to a human trafficking conspiracy, while also contesting that he used force, threats of force, fraud, coercion, or any combination of these means. Anything contradictory in the record, to the extent it exists, would not accurately reflect his position . . . ." *Id.* at 3.

The Court allowed the plea to go forward with Mr. Nicholson making clear his plea was only to conspiracy to engage in human trafficking of minors, and not the use of force, fraud, or coercion.

### C. The PSR, Mr. Nicholson's objections, and the advisory Guidelines calculation

The PSR applies a base offense level of 34 under § 2G1.3(a)(1) – the level reserved for defendants "convicted under 18 U.S.C. § 1591(b)(1)" – to each of three victim groups, then stacks four enhancements on each group: two levels for undue influence; two levels for use of a computer; two levels for the commission of a sex act; and two levels for a vulnerable victim; followed by four levels for an aggravating role and two levels for obstruction of justice. PSR ¶¶ 131–153. Each group reaches an adjusted offense level of 48; the multiple-count adjustment adds three more levels for a combined adjusted offense level of 51; and after a three-level reduction for acceptance of responsibility, the total offense level of 48 is treated as 43 – the ceiling of the sentencing table. PSR ¶¶ 156–163; U.S.S.G. Ch. 5, Pt. A, cmt. n.2. With a criminal history category of I (zero points), the advisory range is life imprisonment. PSR ¶ 176.

Mr. Nicholson has objected to the base offense level and to the enhancements for undue influence, vulnerable victim, aggravating role, and the factual basis for obstruction of justice, along with the PSR paragraphs underlying them. *See* Nicholson PSR Objections. Those objections remain pending, and Mr. Nicholson incorporates them here.

## III. Argument

A substantial variant sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing under the unique circumstances of Mr. Nicholson's case.

Following *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts are not required to impose a sentence within the Guidelines range. Instead, the Court should determine a reasonable sentence under a two-step process. *Gall v. United States*, 552 U.S. 38, 49 (2007). First, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 347–48 (2007)). Next, the Court must give "both parties an opportunity to argue for whatever sentence they deem appropriate" and "consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50. In doing so, the Court "may not presume that the Guidelines range is reasonable," *id.*, and must instead make "an individualized assessment based on the facts presented." *Id.*; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam).

As discussed herein, multiple independent factors under § 3553(a) support a substantial variance in this case.

### A. Even if the Court overrules Mr. Nicholson's objections, the facts and circumstances underlying those objections warrant a substantial variance.

As a threshold matter, regardless of how the Court rules on Mr. Nicholson's objections, a finding that an enhancement applies by a preponderance of the evidence does not dictate the *weight* that the underlying facts carry under § 3553(a). The Court remains free – indeed, obligated – to

consider how far the actual conduct sits from the heartland the enhancement was designed to capture. *See Koon v. United States*, 518 U.S. 81, 93 (1996). Moreover, a sentencing court may vary from the Guidelines based not only on the facts of the case but also on reasoned disagreement with the manner in which the Guidelines operate. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Thus, regardless of the Court's rulings on Mr. Nicholson's objections, the very facts and circumstances underlying those objections would remain powerful grounds for a variance.

**First, the cumulative arithmetic of this calculation overstates the offense.** The PSR takes a base offense level of 34, layers *fourteen* levels of specific offense characteristics and Chapter Three adjustments on top of it, and then triples that construction across three groups arising from a single, roughly four-month course of conduct – producing an uncapped combined offense level of 51, *eight levels beyond the top of the sentencing table itself*. PSR ¶¶ 156–163. When a Guidelines calculation runs off the edge of the table for a first offender in a case the Government resolved with a single conspiracy count, that is a signal that the mechanical calculation has lost its connection to the individualized culpability § 3553(a) requires the Court to assess. Several of the stacked enhancements also draw on the same underlying facts: the victims' runaway status and economic need drive both the undue influence enhancement and the vulnerable victim adjustment; and the same supervisory conduct drives both the four-level role enhancement and the characterization of every interaction as "undue influence." Whatever the technical merits, the aggregation double- and triple-counts a single set of circumstances.

**Second, the contemporaneous forensic record tells a materially more mitigated story than the enhancement labels suggest.** The recovered text messages and device extractions produced in discovery contain no threats by Mr. Nicholson against any victim; many of the recovered communications are warm and affectionate in tone. The PSR itself records that Minor Victim 1

left the group on two occasions and, from North Carolina, contacted Mr. Nicholson and *negotiated the conditions of her own return* – that she be allowed to talk to people outside the group and keep half of her proceeds – conditions to which he agreed. PSR ¶ 51. Minor Victim 3 told Mr. Nicholson she needed to be home on Sunday nights to attend school during the week, declined his suggestion that she work evenings, and declined requests for unprotected acts. PSR ¶¶ 71, 75. These are facts the Court can and should weigh under § 3553(a) regardless of how it resolves the Guidelines objections.

In the event the Court overrules any of Mr. Nicholson's objections, the information underlying the objections – the absence of threats in the forensic record, the shared nature of the enterprise, the victims' documented freedom of movement and negotiation, and the mechanical stacking that drives the calculation past the top of the sentencing table – supplies an independent and compelling basis for a variance under § 3553(a).

**B. § 3553(a)(6): The need to avoid unwarranted sentencing disparities – addressed first, because the Sentencing Commission's own data is decisive – supports a sentence far below the advisory range.**

The convincing data from the Sentencing Commission's own Judiciary Sentencing Information prompts Mr. Nicholson to begin his discussion of the applicable factors with the last consideration under § 3553(a): avoiding unwarranted sentencing disparities.

Congress has instructed courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "[T]he kind of disparity with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case." *United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds by* 552 U.S. 1089 (2008). The Sentencing Commission's Judiciary Sentencing Information tool exists for exactly this purpose: it reports the

sentences actually imposed nationwide on defendants with the same primary guideline, final offense level, and criminal history category, after excluding defendants who received § 5K1.1 substantial assistance departures. *See* JSIN, U.S. Sentencing Commission, *available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

Mr. Nicholson takes this factor out of order and addresses it first, because the Commission's data demonstrates – at every offense level plausibly applicable in this case – that a life sentence would make Mr. Nicholson a national outlier among similarly situated defendants.

**1. At a minimum, the appropriate offense level in this case is 42, and the appropriate JSIN data shows that the advisory range itself dramatically overstates the sentences actually imposed on similarly situated defendants.**

Mr. Nicholson has objected that his conviction for conspiracy under 18 U.S.C. § 1594(c), as specifically clarified and accepted by this Court and the Government, is not a conviction "under 18 U.S.C. § 1591(b)(1)" within the meaning of § 2G1.3(a)(1).[1] As supported by this Court's prior rulings, the Government's own arguments, and the express clarification made and accepted in this case, the record now leads to a base offense level of 30 – not 34. In addition, the Court should sustain Mr. Nicholson's objection to the two-level vulnerable victim adjustment under § 3A1.1(b)(1) – the same double-counting objection this Court has sustained as to a similarly situated co-defendant in this case. Regardless of the Court's other rulings, these legal objections should be sustained.

[1] Mr. Nicholson has argued that the catch-all base offense level of 24 under § 2G1.3(a)(4) governs here. Mr. Nicholson preserves that objection in full. He recognizes, however, that this Court reached a different conclusion in *United States v. Jones*, No. 3:22-cr-00726-SAL, reasoning that the Court begins at § 2X1.1 and looks to the object of the conspiracy.

With a base offense level of 30 and the vulnerable-victim adjustment removed – and with every other objection overruled – each victim group reaches an adjusted offense level of 42; the multiple-count adjustment yields a combined adjusted offense level of 45; and after acceptance of responsibility, the total offense level is 42. With a criminal history category of I, the advisory range would be 360 months to life.

A current JSIN query for defendants matching Mr. Nicholson at this level reveals the following:

> During the last five fiscal years (FY2021-2025), there were 26 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 42 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 26 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 220 month(s) and the median length of imprisonment imposed was 201 month(s).

*See* JSIN, U.S. Sentencing Commission, *available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

The import of this data cannot be overstated. The *bottom* of the advisory range assuming the Court grants only the well-supported legal objections – 360 months – is 140 months (nearly twelve years) above the *average* sentence actually imposed on similarly situated defendants, and 159 months (more than thirteen years) above the *median*. And these figures already exclude every defendant who earned a substantial-assistance departure; the 220-month average reflects defendants who, like Mr. Nicholson, received no § 5K1.1 motion.

In other words, judges across the country, confronting the same guideline, the same offense level, and the same criminal history category, have concluded again and again that the range overstates the appropriate sentence – by more than a decade. A life sentence would not merely exceed

the national average; it would tower over the sentence of every comparable defendant in the Commission's five-year dataset. This factor alone supports a substantial variance.

**2. Even under the PSR's calculation, the JSIN data supports a substantial variance – and the offense level 43 data actually understates the disparity.**

The result does not change if the Court overrules every objection and adopts the PSR's total offense level of 43. The PSR itself reports the Commission's data for that cell:

> During the last five fiscal years (FY2020-2024), there were 74 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 74 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 303 month(s) and the median length of imprisonment imposed was 300 month(s).

PSR ¶ 199. Even taking the PSR's calculation at face value, the advisory sentence – Life – is far above the 303-month average and 300-month median actually imposed on offense level 43 defendants nationwide.

But there is a structural reason the offense level 43 cell *understates* the disparity in Mr. Nicholson's case, and it deserves the Court's particular attention. Offense level 43 is not an ordinary cell on the sentencing table – it is a *catch basin*. Under Chapter 5, Part A, comment note 2, "[a]n offense level of more than 43 is to be treated as an offense level of 43." The 74 defendants in that cell therefore include every offender whose uncapped offense level ran to 48, 49, or into the 50s and beyond – defendants with far more victims, far more enhancements, and far more aggravated conduct, all compressed into a single data point. The cell's 303-month average is pulled upward by the very worst offenders in the federal system. Mr. Nicholson does not belong at the top of that distribution: with only the two-level vulnerable-victim correction the Court has already applied in this case, his uncapped total offense level is 46 – near the floor of the cell, not its ceiling.

So while the data still proves the essential point – that a life sentence sits far above what courts actually impose even at the table's ceiling – the 303-month average itself likely *overstates* the appropriate sentence for a defendant, like Mr. Nicholson, at the bottom edge of the offense level 43 population. The properly comparable figure remains the offense level 42 data: an average of 220 months and a median of 201 months. This is also in keeping with recent experience within this Circuit. In *United States v. Zelaya-Veliz*, 94 F.4th 321 (4th Cir. 2024), five MS-13 gang members were convicted *after a jury trial* of conspiring to traffic, and trafficking, a child under the age of *fourteen* for sex in violation of 18 U.S.C. §§ 1591(a), (b)(1), and (c) – the aggravated penalty provision, on facts involving a juvenile runaway repeatedly sold to multiple men and subjected to gang violence. The district court sentenced those defendants to terms of 180, 180, 192, 264, and 300 months of imprisonment. *See id.* at 332.

If defendants convicted at trial of violently trafficking a child under fourteen received sentences of fifteen to twenty-five years, a life sentence for Mr. Nicholson – who pled guilty, who has zero criminal history points, and who admitted the age-based conspiracy – would be an unwarranted disparity of the starkest kind.

**3. Although § 3553(a)(6) speaks to disparities across judges and districts, disparities among the defendants in this case are properly considered under the nature and circumstances of the offense – and they, too, support a variance**

Although disparity among individuals in the same case is not the type of disparity contemplated by 18 U.S.C. § 3553(a)(6), it is certainly relevant when examining the nature and circumstances of the offense. *See United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds by* 552 U.S. 1089 (2008). Because the comparison among the participants in this

case flows naturally from the disparity analysis above, Mr. Nicholson raises it here – while acknowledging that, as a statutory matter, it is more closely tied to § 3553(a)(1)'s directive that the Court consider the nature and circumstances of the offense.

The PSR describes a shared enterprise, not a one-man operation. Rebecca Perry – not Mr. Nicholson – first took in Minor Victim 1 in Augusta, Georgia, brought her to South Carolina, and "taught MV1 how to be a commercial sex worker," including her "lessons" on collecting money and using protection. PSR ¶¶ 40–41, 95–97. Monesha Gary – described by the victims themselves as the "second boss" – scheduled "plays," collected proceeds when Mr. Nicholson was not present, monitored the victims' movements, supplied lingerie, and, by her own admission, "oversaw the girls" and was "in charge" in the absence of others, all while carrying a firearm. PSR ¶¶ 33, 44, 72, 79, 102. Terrell Counts was "second in charge," provided surveillance and transportation, and held keys to the victims' rooms. PSR ¶ 33. Jared Pease created and operated the SkipTheGames account and personally posted the advertisements across two states. PSR ¶¶ 91–92. None of this excuses Mr. Nicholson's own conduct, which he has admitted. But it does mean the culpability in this case was distributed across at least five participants – and a sentence for Mr. Nicholson that is orders of magnitude above the sentences imposed on the participants who personally recruited, transported, trained, supervised, and advertised the victims would be manifestly unjust.

Each of Mr. Nicholson's co-defendants – Gary, Perry, and Counts – has pled guilty and received sentences ranging from 135 months to 165 months. *See* PSR at 2; ECF Nos 272, 275, 280. Mr. Nicholson does not ask to be treated as anything other than what the record shows he was – a participant in a shared enterprise – but the nature and circumstances of that shared enterprise cannot justify a life sentence for one participant among several.

### C. A variance from the advisory Guidelines range is warranted based on a consideration of the sentencing factors under 18 U.S.C. § 3553(a).

In addition to the disparity analysis above, the Court must consider the remaining statutory factors: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public; the need to provide the defendant with training, medical care, or other correctional treatment; the kinds of sentences available; the applicable Guidelines range; pertinent policy statements; and the need to provide restitution. 18 U.S.C. § 3553(a). Congress has further instructed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). With those purposes in mind, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes of [sentencing]." 18 U.S.C. § 3553(a) (emphasis added). Each factor supports a substantial variance here.

#### 1. *§ 3553(a)(1): A variance is appropriate based on Mr. Nicholson's history and characteristics.*

Mr. Nicholson is 34 years old and comes before this Court with **zero criminal history points** – his only prior contacts with any court were two municipal fine-only dispositions at age 17, for public disorderly conduct and trespass after notice. PSR ¶¶ 120–123. He has never served a custodial sentence of any kind. That a man could reach his mid-thirties in the environment in which Mr. Nicholson was raised without accruing a single criminal history point speaks to who he is at his core – and it is powerful evidence that the conduct in this case, however serious, is not the pattern of his life.

Mr. Nicholson's complete absence of criminal history points is also an independent basis for a variance. The Sentencing Commission itself has recognized what the data has long shown:

offenders with zero criminal history points are meaningfully different from other offenders, recidivating at the lowest rates of any group in the federal system. *See Recidivism of Federal Offenders Released in 2010*, U.S. Sentencing Commission (2021), at 14-15, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf. Indeed, the Commission found the distinction so significant that in 2023 it amended the Guidelines to add § 4C1.1, granting a two-level reduction to zero-point offenders as a class. Mr. Nicholson is categorically ineligible for that adjustment – not because the Commission's empirical judgment about zero-point offenders applies any less to him, but solely because of the nature of his offense of conviction. § 4C1.1(a). The Court, however, is not so constrained: the same lower culpability and lower risk that the Commission built into § 4C1.1 remain fully available to the Court as a variance consideration under § 3553(a)(1). And the underlying fact deserves emphasis: Mr. Nicholson reached the age of 33 – raised amid domestic violence, an absent and abusive father, and financial hardship, PSR ¶ 165 – with nothing on his record beyond two fine-only municipal dispositions at age 17. PSR ¶¶ 120–123.

Indeed, Mr. Nicholson's childhood was marked by trauma the PSR describes in painful detail. He was raised almost entirely by his mother, and he repeatedly watched her suffer violent assaults at the hands of the men in her life – on one occasion so severe that she nearly died. PSR ¶ 165. His father was absent except for a single year, at age eight, that Mr. Nicholson describes as traumatic: his father physically abused him, forced him to stand outside wearing a degrading sign, and told an eight-year-old boy, "You ain't shit but a responsibility." *Id.* Mr. Nicholson returned to his mother's care and, despite the family's financial struggles, became what his mother calls the "Lil Big brother" – the second-born who nonetheless "became the man of the house, always making sure everyone was OK and always putting himself last." Letter of Lorraine Marshall, Exhibit

A, at 1. He earned his high school diploma in 2013 and worked in residential renovation and maintenance before his arrest. PSR ¶¶ 172, 174.

The letters submitted on Mr. Nicholson's behalf – attached as Exhibit A and incorporated into this Memorandum – paint a consistent portrait of a man defined by devotion to family and by lifting up the people around him. His brother-in-law, Marquise Henderson, writes that as a struggling teenager – failing in school, fighting at home, "going down the wrong path" – it was Mr. Nicholson who redirected him: taking him to play basketball "every day . . . for four years Monday through Friday to focus my anger elsewhere," helping him find his first job, bringing up his grades so he could graduate, teaching him to work on cars and build credit, and taking him in – with food, a bed, and Mr. Nicholson's own clothes – when he had nowhere to live. Letter of Marquise Henderson, Exhibit A, at 5. It was Mr. Nicholson who convinced him to join the Army in 2017, a decision Mr. Henderson calls "the turning point I needed"; he is now happily married with two children and writes, "I owe it all to him." *Id*. His sister recalls that after their father left, her brother "was younger than me but was our protector." Letter of Mr. Nicholson's Sister, Exhibit A, at 6. His brother confirms that Mr. Nicholson was a "role model" and a "protector." Letter of Jacobi Boyd, Exhibit A, at 2. His sister-in-law, who holds degrees in paralegal studies and business management, writes with full awareness of the seriousness of the charges and asks only that Mr. Nicholson not "end up carrying the full burden of blame, while others involved may not be held equally accountable for their roles." Letter of Kaybree Stribble-Boyd, Exhibit A, at 3.

Above all, Mr. Nicholson is a father. He has two sons, now ages eight and two, and their mother, Breanah Henderson – his partner of more than a decade – writes that their eight-year-old "looks at his dad as if no one else in the world exist[s]." Even from custody, Mr. Nicholson "makes it a priority every single day to hear his son's voices"; she writes that "he loves our boys more than

life itself," and that a man raised without a father "has done nothing but try his hardest to break that generational curse." Letter of Breanah Henderson, Exhibit A, at 8. The Court should also consider the conditions of Mr. Nicholson's confinement to date: he has been detained continuously since July 25, 2023 – nearly three years. PSR at 2 & n.1. In July 2024, he was attacked at the Alvin S. Glenn Detention Center and suffered a broken right hand that went unrepaired until surgical placement of two screws in May 2025; his requests for mental health assistance at the detention center went unanswered. PSR ¶¶ 169–170.

### 2. *§ 3553(a)(1): A variance is appropriate based on the nature and circumstances of the offense.*

Mr. Nicholson does not minimize his offense. He conspired with others to cause minors to engage in commercial sex acts, and he has admitted it. The victims in this case have described real and lasting harm, and nothing in this Memorandum – or in Mr. Nicholson's objections – is intended to diminish their experience or their courage. The dispute before the Court is not whether the victims were harmed; it is what the record proves about *how* this offense was committed and what Guideline labels attach to it.

On that question, the circumstances here differ materially from the heartland of the aggravated trafficking cases that produce the sentences the Guidelines contemplate at the top of the table. The contemporaneous forensic record – the recovered text messages and device extractions – contains no threats by Mr. Nicholson against any victim, and many of the recovered communications are warm in tone. The PSR documents victims who kept their phones, came and went, left the group entirely, and – in Minor Victim 1's case – negotiated the terms of any return. PSR ¶ 51. It documents Minor Victim 3 maintaining her school schedule over Mr. Nicholson's objection and refusing categories of acts without reprisal. PSR ¶¶ 71, 75. And it documents an enterprise in which

recruiting, transporting, training, advertising, scheduling, supervising, and collecting were performed by many hands – Perry, Gary, Counts, Pease, and Nash among them – rather than by Mr. Nicholson alone. PSR ¶¶ 33, 43–44, 50, 91–92, 95–98. Mr. Nicholson, by his own account, believed he had "created a 'family' of strangers who 'were all hurting,'" PSR ¶ 88 – a belief that was profoundly and tragically misguided, but that is a different thing from the armed, violent coercion that defines the cases at the top of this Guideline. The offense is serious. It is not a life-sentence offense.

**3. *§§ 3553(a)(2)(A)–(C): A variance reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.***

Even assuming a substantial variance, Mr. Nicholson faces an enormous sentence by any measure. For example, a sentence at the JSIN average for a total offense level of 42 – 220 months – is more than eighteen years in federal prison for a man who has never served a custodial sentence of any length. Such a sentence unquestionably reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. It also affords powerful general deterrence: no observer could look at a sentence of that magnitude, imposed on a first offender, and conclude that this conduct is treated leniently.

As to specific deterrence and protection of the public, the data is equally clear. Mr. Nicholson is 34 and will be in prison well into his 40s even with a substantial variance. According to the Sentencing Commission, offenders released between the ages of 40 and 49 are markedly less likely than their younger counterparts to be re-arrested, and offenders who served sentences of more than 120 months were 29 percent less likely to be rearrested than those receiving shorter sentences. *See The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Commission (December 2017), at 10-13, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-

publications/research-publications/2017/20171207_Recidivism-Age.pdf; *Length of Incarceration and Recidivism,* U.S. Sentencing Commission (June 2022), at 19, 26, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf. And wholly apart from imprisonment, Mr. Nicholson will be subject to lifetime sex offender registration and to a recommended lifetime term of supervised release, with conditions – including computer monitoring, contact restrictions, and treatment – that will follow and constrain him for the rest of his life. PSR ¶¶ 182, 195. A life sentence adds nothing to public protection that these measures, combined with a decades-long term of imprisonment, do not already guarantee.

***4. § 3553(a)(2)(D): A variant sentence is appropriate given the needed educational, vocational, and medical treatment***

Mr. Nicholson worked in residential renovation and maintenance before his arrest, PSR ¶ 174, and a variant federal sentence will allow him to earn his way through the Bureau of Prisons' vocational and educational programming and to receive the mental health care he sought, unsuccessfully, in pretrial detention. PSR ¶ 170. Mr. Nicholson respectfully requests that the Court recommend he be screened for vocational training programs, mental health treatment, and substance abuse treatment. A sentence below the advisory range will still afford Mr. Nicholson the full force and benefit of these programs – and will preserve the possibility that his two sons will know their father as a free man.

***5. §§ 3553(a)(3)–(a)(5) and (a)(7): A variant sentence is appropriate given the kinds of sentences available, the advisory range, pertinent policy statements, and restitution.***

Because the offense of conviction is a Class A felony, imprisonment is required, and Mr. Nicholson does not suggest otherwise. PSR ¶¶ 184–185. The applicable Guidelines range is one factor among many, and it is not to be presumed reasonable. *Nelson*, 555 U.S. at 352. The pertinent

policy statements themselves recommend a lifetime term of supervised release for sex offenses, U.S.S.G. § 5D1.2, ensuring that the Court's supervision of Mr. Nicholson will not end when his term of imprisonment does. Finally, restitution is mandatory under 18 U.S.C. § 1593, PSR ¶¶ 191–194, and Mr. Nicholson does not oppose a restitution order in the amount the Court determines; a determinate sentence followed by supervised employment maximizes the realistic prospect that restitution is actually paid.

## IV. Conclusion

For the reasons stated herein, Mr. Nicholson respectfully requests that the Court grant a substantial variance. Such a sentence will be sufficient, but not greater than necessary, to serve the interests of justice for the victims, the general public, the Government, Mr. Nicholson, and the community.

Respectfully submitted,

/s/ Derek A. Shoemake
Derek A. Shoemake (No. 10825)
derek@lawconnell.com
Connell Law Firm
20 Townlee Lane, Suite A
Lugoff, SC 29078
(803) 408-8500

Attorney for Mr. Nicholson

July 13, 2026
Lugoff, SC